IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal No. 4:15-cr-79 |
| v. | ) | |
| | ) | **Redacted** |
| | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| BRADLEY J. PRUCHA, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the United States of America, by its undersigned counsel, and provides the following memorandum for the sentencing in this matter.

## TABLE OF CONTENTS

I.    Introduction ................................................................................................................2

II.   Government's PSR Objections .......................................................................................2

III.  Defendant's PSR Objections .........................................................................................2

IV.   Appropriate Sentence In This Case ...............................................................................8

      A. Sentencing Factors ...............................................................................................8

      B. Nature and Circumstance of the Offenses .............................................................9

      C. History and Characteristics of the Defendant .....................................................14

      D. Need for the Sentence Imposed ...........................................................................15

      E. Guideline Sentencing Range and Recommendation ............................................16

V.    Conclusion ...............................................................................................................17

## I.  Introduction

On March 1, 2016 a jury found Defendant Bradley J. Prucha guilty of: directing a multi-state, complex retail theft scheme by exploiting several individuals, including minors; producing and possessing child pornography all while required to register as a sex offender; providing Xanax to the same minors he exploited for sexual and financial gain; and attempting to bribe the minors to change their testimony. (Docket No. 72 (Third Superseding Indictment); Docket No. 181 (Jury Verdict)). The Presentence Investigation Report ("PSR") accurately finds Defendant has a total offense level of 43,[1] criminal history category of V, and thus due to statutory maximums, a guideline range of 6,060 months before the application of 18 U.S.C. § 2260A (Counts 17-19), which requires the imposition of ten year consecutive sentences to the production of child pornography counts (Counts 12-14). (PSR ¶161). The government respectfully submits that a term of imprisonment of no less than **eighty years** of imprisonment, or **960 months**, is warranted in this case.

## II.  Government's PSR Objections

**PSR ¶26**: The government notes that PSR ¶26 still incorrectly refers to a "video of Minor #4" where it should read "Minor #3".

**PSR ¶¶77-83 (Group 5)**: The government withdraws its objection (which did not affect the ultimate Guideline range in the case).

## III. Defendant's PSR Objections

Defendant objects to almost the entire PSR without specifying the bases for most of his objections, referring only to a future sentencing memorandum. Without knowing the reasoning

---

[1] The total offense level would be 44 were it not that the maximum total offense level in the guidelines is 43. PSR ¶¶88-90 & n. 1.

for his objections, it is difficult for the government to respond; the government attempts to do so briefly below and will be prepared to address any remaining issues at the sentencing hearing once Defendant's brief is filed. It is clear, however, that all of Defendant's objections are baseless on their face and should be rejected.

**PSR ¶¶11-34 (Offense Conduct)**: Defendant makes a blanket objection to the entire offense conduct statement to the extent it contradicts his trial testimony. The trial record, including the government's seventeen witnesses and voluminous exhibits, supports PSR ¶¶11-34.

**PSR ¶¶35, 47 (Loss Amount)**: Defendant objects to the loss amount, arguing that the loss should be offset by the amount paid for stolen goods. Evidence at trial showed the loss amount was at least $136,437.03. That figure only represents the amount of illegal sales found on two eBay and PayPal accounts utilized by Defendant. (PSR ¶14). It does not account for the money he acquired through returns made to stores, sales made on Craigslist, or to bulk and direct buyers whose purchases he arranged over email. It also does not include accounts he probably held in the name of "Vicky Ayala", his sister Catherine Fitzgerald, and others. Furthermore, Defendant stole expensive items, then turned around and sold them on eBay and elsewhere for a tiny fraction of the cost. For instance, through an intricate return process, he stole $349.99 Legos for the price of a $12.97 Lego. (PSR ¶13). Defendant had no legitimate income during the course of the conspiracy; thus, all items were purchased through proceeds from the fraud. Defendant is not entitled to an offset for the operating expenses of his fraud. The loss amount is, if anything, grossly understated.

**PSR ¶¶57, 65 (Commission of a Sexual Act or Sexual Contact)**:  The images clearly depict Defendant having sexual intercourse and/or oral sex with his victims (Counts 13, 14), and

Defendant admitted to the sexual contact. The two level enhancements apply.

**PSR ¶58 (Depiction of Violence)**: Defendant objects to the four level enhancement pursuant to USSG § 2G2.1(b)(4) in PSR ¶58 for the depiction of violence. This enhancement applies due to Count 13, which consists of a lengthy video showing the repeated penetration of a minor by the Defendant, including sexual intercourse, oral sex and digital penetration.[2] Images of sexual penetration by a minor, and even attempted sexual penetration, are "per se sadistic." *United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010); *United States v. Belflower,* 390 F.3d 560, 562 (8th Cir. 2004). "Such images . . . bespeak a sadistic intent to achieve sexual pleasure through the necessarily violent depiction of a minor as either a sexual object ripe for or deserving of sexual exploitation, or as a sexual subject desirous of and complicit in his or her own sexual exploitation." *Belflower*, 390 F.3d at 562. *See also United States v. Starr*, 533 F. 3d 985, 1001-02 (8th Cir. 2008) (enhancement applied to a seventeen year old victim who was sexually penetrated by a foreign object).

**PSR ¶¶59, 66 (Vulnerable Victim)**: The two level enhancement for vulnerable victims applies to both Minor #2 and Minor #3 because Defendant knowingly exploited Minor #2's unstable family life and background, and because Minor #3 was mentally and physically incapacitated by Xanax and other drugs provided to her by Defendant.

Courts have applied the vulnerable victim enhancement when defendants exploit minor victims' "background and lack of parental guidance." *United States v. Evans*, 285 F.3d 664, 672 (8th Cir. 2002). *See also Starr*, 533 F.3d at 1002 (upholding the application of the enhancement after the district court determined that the minor victim had psychological and family problems of which Defendant was or should have been aware). Minor #2 met Defendant when she was

---

[2] The PSR has not applied this enhancement to Count 12 or 14.

fifteen years old and living in a hotel room with Defendant's ex-wife. His ex-wife then stole everything Minor #2 owned: this was the state she was in when Defendant targeted her. Minor #2 did not live with her parents for the entirety of the time she knew Defendant, nor did she have a stable home. As Minor #2 testified, she had no one in her life other than Defendant, who became her "best friend". Despite everything he had done to her, because she had no parental or adult figures in her life guiding her or taking care of her, she continued to care about him and look back at their time together with some degree of fondness and appreciation. She was so vulnerable when he exploited her that she was grateful to him despite the fact that he used her to steal for him, paid her to have sex with him, filmed her naked and having sex with him, refused to delete those images when she "begged" him to multiple times, and physically threatened her. Defendant freely admitted on cross-examination that he was aware of her vulnerable state throughout his exploitation of her. (Ex. A, Prucha Tr. 83:7-25).

The vulnerable victim enhancement also applies to Minor #3 because Defendant provided her Xanax and marijuana to the point that she was incapacitated and unaware that she was being filmed. *See United States v. Iron Cloud*, 312 F.3d 379, 382 (8th Cir. 2002) (noting proper application of vulnerable victim enhancement when the victim was intoxicated and in a "limited state of consciousness"). *But see United States v. Heath*, No. 09-CR-2003-LRR, 2010 WL 145476, at *7 (N.D. Iowa Jan. 11, 2010), *aff'd*, 624 F.3d 884 (8th Cir. 2010) ("A victim's consumption of alcohol is not, by itself, enough to qualify a victim as vulnerable. Some other factor, such as limited consciousness or other physical or mental incapacity, is typically required.") (collecting cases). Both Minor #3 and Minor #2 were under the influence of Xanax the Defendant gave them at the time the videos were produced. They both testified that they took large quantities of Xanax from the Defendant. Minor #3 always took a bar and a half or so of

Xanax from the Defendant prior to oral sex, and did so every time she was with him. Defendant further testified that Minor #3 was under the influence of marijuana at the time the video of her was filmed. (Ex. A, Prucha Tr. at 46-48). *See United States v. Rivera*, 554 Fed. App'x 535, 537 (8th Cir. 2014) (finding justification for the "vulnerable victim" enhancement when considering evidence in the record that indicated the defendant provided marijuana to the victim prior to a sexual assault). Minor #3 was certainly drugged to the point of incapacitation, as she testified that she has no memory of the video being filmed, and other evidence corroborated the fact that she was unaware that she was being filmed. The enhancement is properly applied to both minors.

**PSR ¶¶61, 68, 75, 82 (Obstruction of Justice)**: This enhancement applies for several reasons. First, the Court heard extensive testimony regarding Defendant's attempts to bribe minor witnesses to sign false affidavits, conduct for which he was found guilty by a jury (Counts 20-23). Second, Defendant provided false testimony as to each count; these false statements are summarized in PSR ¶¶ 30-34 and are attached in full at Exhibit A. Third, there was significant evidence that Defendant threatened Minor #3 and Minor #2 so that Minor #3 would not report the video of her (that forms of the substance of Count 14) to law enforcement. *See* USSG § 3C1.1 App. Note 4(K). For all these reasons, the enhancement applies.

**PSR ¶¶84, 85, 86, 87, 90 (Multiple Count Adjustments)**: The PSR correctly assigned two units for an increase of two offense levels. Defendant's objections appear to be based on his prior objections to sentencing enhancements, which have been addressed separately.

**PSR ¶¶88, 101 (Repeat and Dangerous Sex Offender Against Minors):** Defendant provides no explanation for why he should not be considered a repeat and dangerous sex offender against minors under USSG § 4B15. Defendant committed the instant offenses— covered sex crimes—after sustaining the sex conviction described in PSR ¶96. The guideline

applies, as further set out by the Probation Office's response at PSR pp. 50-51.

**PSR ¶¶ 159, 160 (Application of 18 U.S.C. § 2260A)**: Defendant objects to the imposition of 18 U.S.C. § 2260A, arguing that it does not apply when the minimum term of imprisonment for a violation 18 U.S.C. § 2251 is twenty-five years, and that the imposition of a 10 year consecutive sentence is unconstitutional. Defendant is incorrect. Double jeopardy does not apply because 18 U.S.C. § 2260A requires an additional element: that Defendant was required to register as a sex offender at the time of the production offenses, an element that Defendant stipulated to before trial. *See, e.g.*, *United States v. Shouse*, 2015 U.S. Dist. LEXIS 3345, at *11-12 (D. Mont. Jan. 12, 2015). Nor does the statute constitute cruel and unusual punishment. *United States v. Wellman*, 663 F.3d 224, 232 (4th Cir. 2011) (holding § 2260A does not violate the Eighth Amendment). *See also United States v. Carver*, 422 F. App'x 796, 802 (11th Cir. 2011) (unpublished disposition) (finding that § 2260A does not criminalize the "status" of being a sex offender and thus does not violate the Fifth, Eighth, Thirteenth and Fourteenth Amendments).

**PSR ¶159 (Minimum Term of Imprisonment for 18 U.S.C. § 2251(e))**: Defendant argues that his prior Florida sex conviction does not qualify as a prior conviction such that the twenty-five year statutory minimum applies, and/or that the issue had to be submitted to the jury under *Apprendi*. This is incorrect. The Florida statute for which Defendant was previously convicted, Fl. Statute § 800.04(4)(a), criminalizes engaging in sexual activity with a person twelve years of age or older but less than sixteen years of age. Defendant was found guilty of having sex with a thirteen year old girl when he was twenty-four years old. This qualifies as sexual abuse of a minor under 18 U.S.C. § 2243 (criminalizing knowingly engaging in a sexual act with (1) another person between the ages of twelve and sixteen; and, (2) who is at least four

years younger than the person so engaging). It does not matter whether a four year age difference is an element of the state sex offense when Defendant was in fact more than four years older than the victim. Furthermore, *Apprendi* does not apply to the fact of a prior conviction. *Apprendi v. United States*, 530 U.S. 466, 496-97 (2000).

**Additional Miscellaneous Objections:** Defendant makes various objections to the inclusion of information gleaned by Probation from judicial records and from Polk County Jail. The government knows of no reason why these paragraphs should be stricken and Defendant provides no legal or factual bases for doing so.

## IV. Appropriate Sentence in this Case

Defendant is a predator. He manipulated vulnerable teenage girls to commit fraud for him and to have sex with him by providing them Xanax, money and gifts, through threats and intimidation, and through emotional and mental manipulation. He has demonstrated zero remorse for any of his actions. The overwhelming evidence presented at trial, in conjunction with his sworn testimony and his prior convictions for the same exact conduct—the bar code scheme, sex with a minor, and violence against women—has demonstrated that he will certainly pick up his criminal activity where he left off at the earliest opportunity. A lengthy term of imprisonment is justified in this case in order to protect the public from his actions, to reflect the seriousness of his numerous crimes, and to provide just punishment for his brazen, lengthy and unabashed criminal conduct.

### A.    Sentencing Factors

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1.    the nature and circumstances of the offense and history and characteristics of the

8

defendant;

2.      the need for the sentence imposed -

    A.      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B.      to afford adequate deterrence to criminal conduct;

    C.      to protect the public from further crimes of the defendant; and

    D.      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.      the kinds of sentences available;

4.      the guideline sentencing range;

5.      any pertinent policy statement;

6.      the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.      the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).

## B.      Nature and Circumstances of the Offenses

### *Retail Theft Scheme*

Defendant was the leader of a retail theft scheme from at least October 2013 until he was arrested – essentially as soon as he was released from prison for conducting the same exact scheme in Florida. (*See, e.g.*, PSR ¶97 and trial testimony from Master Deputy Robert ("Bud") Hart). After the government presented days of testimony from several witnesses and voluminous exhibits demonstrating his role as ringleader in the multi-state conspiracy, Defendant nonchalantly admitted to the scheme on the stand, demonstrating zero remorse and offering no explanation for his role or why he waited until after the close of the government's case to admit guilt, merely stating that "nobody gets to see the whole story if I plead guilty." (Ex. A, Prucha Tr. at 19:4-20:15).[3] Defendant was demonstrably proud of his actions and wanted a jury, the

---

[3] Evidence presented by the government included, among other things: testimony from co-conspirators who executed the thefts for him, including placing fake bar codes on items, purchasing the items, and returning the stolen items; testimony from persons to whom Defendant made admissions and observed the stolen items in Defendant's possession; surveillance images from stores; receipts from stores and from Defendant's apartment and vehicle, showing that he

Court, and the public to see what he had accomplished.

The theft scheme was complex and resulted in an untold loss to retailers across the country. Testimony and records showed that Defendant purchased everything using fraudulent bar code stickers he printed. Defendant distanced himself from the scheme by recruiting others to perform the thefts for him, and by using eBay, PayPal, credit card, and email accounts in others' names, such as Lindsey Storrs and his minor nephew.[4] His theft scheme did not just end at stealing items for himself and others. He repeatedly and purposefully used minors to execute the scheme for him, preying upon their vulnerabilities. Testimony and surveillance photos showed Defendant using his minor nephew in Florida from the age of approximately eleven years old and teenage girls such as Minor #2.

Defendant funded the sexual exploitation of minors using the proceeds of his theft scheme. Defendant had Minor #2 steal for him, paid her a small percentage of the profit, and then took the rest of that profit and paid Minor #2 and her friends to have sex with him, either directly with cash, with Xanax, or trips and other gifts. In a recorded phone call Defendant described in detail having sex with Minor #2 and Minor #5 at the same time and states: "It was expensive but [Minor #2] paid for it with two items . . . . One big one and one small item. She paid for it all." (Ex. B). Minor #5 told the FBI that she had sex with Defendant in return for cash and Xanax, which was corroborated by Defendant's own words. (Ex. B (Call Transcript), C (Minor #5 Interview)).

---

directed thefts and returns of stolen property from Iowa to Florida and surrounding states and matching the surveillance images; the bar code printer he used to print fraudulent bar codes; fraudulent bar code stickers with Defendant's handwriting; eBay, PayPal, Craigslist, and Gmail records, emails, and testimony showing Defendant selling stolen items online; and a wire recording of a trip to three different stores in which Defendant directs the theft of items.

[4] Evidence at trial suggested Defendant had other accounts, such as in the names of "Vicky Ayala" and his sister Catherine Fitzgerald. (GX 113B, 300).

Given the nature and circumstances of the retail theft scheme, in conjunction with the other sentencing factors discussed further below, a maximum term of imprisonment of twenty years imprisonment for the mail fraud counts (2-3, 8-11) and a maximum term of imprisonment of five years imprisonment for the conspiracy count (Count 1), is warranted in this case. The government recommends imposing the twenty year sentence consecutively to the sexual exploitation sentence in recognition that the theft scheme is largely a separate (though related) offense.

### Sexual Exploitation of Minors

Defendant not only filmed three sexually explicit videos of two different teenage girls, but he did so when he was paying them to have sex with him, and when they were under the influence of Xanax that he had given them knowing it would lower their inhibitions. He then showed those videos to several other people.

In regards to the video of Minor #3 performing oral sex on Defendant (Count 14), Defendant filmed that video without her permission, denied ever having taken it, and physically threatened Minor #2[5] when Minor #3 found out about it and threatened to go to the police. Minor #3 testified that she only had oral sex with him when he paid her to do so, and was under the influence of Xanax that he gave her. Thus, he paid and drugged a minor to perform oral sex on him, filmed it without her knowledge, showed it to others,[6] and then physically threatened Minor #2 when Minor #3 approached him about it. In recorded calls, he laughingly describes Minor #3

---

[5] Defendant told Minor #3, in front of Minor #2, that it would be "[Minor #2]'s head" if Minor #3 told anyone about the video of her performing oral sex on Defendant.

[6] Defendant showed the video to at least Billi Franklin, who testified that he acted like it was "not a big deal." and Minor #2 who described his demeanor as "happy; excited". Minor #5 also told the FBI that Defendant repeatedly told her that he had a video of Minor #3 performing oral sex on him. (Ex C (Minor #5 Interview)). Defendant showed the video described in Count 13 of Minor #2 to at least Minor #3.

calling him in tears when she learns of the video, and callously tells her in response that he had a recording sign in his apartment, with the implication that she had somehow consented to being the victim of the production of child pornography. (Ex. A, Prucha Tr. 79:15 – 80:13; Ex. D (Call Transcript), Ex. E (Call Transcript)).

Unlike Minor #3, Minor #2 knew that he was filming the video of her, and Defendant would have the Court take that into consideration. Yet it is a moot point, because for one, a minor cannot consent to be sexually exploited, and secondly, Minor #2 testified that she repeatedly asked him to delete the video but instead of doing so, he showed the video to others, including Minor #3, who testified that he "kind of laughed and said watch it"; "He thought it was funny." Minor #2 was under the influence of Xanax at the time, which is obvious upon watching the video as well as evident by her testimony. Minor #2 was also paid to have sex with Defendant.

Defendant maintained the videos on his laptop and thumb drive, showing them to others and possessing them at the time of his arrest. He was also required to register as a sex offender, resulting in additional penalties of ten year consecutive sentences to Counts 12-14. (Count 17-19).

The nature and circumstances of these offenses are such that, combined with the factors discussed below, the government respectfully suggests that the Court impose at least the minimum term of imprisonment of twenty-five years for each count of production (Counts 12-14), Counts 12 and 13 to be served concurrent with each other, and Count 14 to be served consecutive to Counts 12-13. The government further suggests that a concurrent term of imprisonment of twenty years for possession (Count 15), and the mandatory ten years for Counts 17-19 be served consecutive to Counts 12-14 and concurrent with all other counts, for a total of sixty years, is appropriate in this case. A sentence of no less than sixty years would represent

twenty-five years for each minor victim (plus the consecutive ten years) in recognition of the fact that the exploitation of each victim was related but distinct.

***Distribution of Xanax***

Defendant gave Xanax to at least four minors, all when they were sixteen and/or seventeen years old, and did so in order to induce them to have sex with him. The Court has already heard testimony from Lindsey Storrs, Minor #2, Minor #3, Yancy Freland, and Billi Franklin describing how Defendant gave the girls his mother's Xanax prescription. They took a large number of pills, enough to help them lower their inhibitions to have sex with him for money. Minor #2 described taking two white bars at a time, Minor #3 a bar and a half. In her interview, Minor #5 said she was so addicted to Xanax that she would take 3-4 bars at a time; Defendant specifically lured her to his apartment by telling her he had her "favorite things" and giving her Xanax once she got to the apartment. (Ex. C (Minor #5 Interview)). Defendant himself on tape says that he told Minor #5, "I'll just give you three if you let me have the whole thing." – three bars of Xanax for sexual intercourse. (Ex. F (Call Transcript)). Defendant didn't just knowingly distribute Xanax to teenage girls. He did so in order to lure them to his apartment, to induce them to have sex with him, and to film child pornography of them. He distributed Xanax over and over again to multiple victims. Thus, in conjunction with the additional factors discussed below, a concurrent term of imprisonment of ten years imprisonment for Count 16 is appropriate in this case.[7]

***Witness Tampering***

What is perhaps most alarming about Defendant's conduct underlying the witness tampering charges is that he provided a fellow inmate, someone he knew was a convicted sex offender, with personal details about the minor witnesses. Defendant gave him maps to the girls'

---

[7] The minimum term of imprisonment for this offense is one year.

homes, their phone numbers, details about their personal lives, names of family members, the hours and location of their jobs—anything he could think of in order to help the inmate locate and bribe these girls. He persisted in his efforts to bribe minor witnesses throughout repeated hearings before the magistrate court in which he was admonished multiple times not to contact the minors, directly or indirectly. He had ample access to his investigator and attorney; he knew he could not approach the minors but attempted to do so anyway. Furthermore, he was trying to bribe *minor victims*, not just any witnesses. In doing so, he was trying to further demonstrate to them that he controlled them and that they should fear him, even from jail. This is just one way that Defendant has refused to relinquish his attempts to manipulate his victims.

The government recommends concurrent sentences of at least twenty years for the four witness tampering counts. This sentence takes into consideration that the witnesses were never actually contacted, that it did not appear that Defendant intended to overtly threaten the minors with violence, and that the maximum term of imprisonment would have been twenty years setting aside the enhanced maximum term because the offense occurred in conjunction with a trial of a criminal case for which an offense charged had a maximum term of imprisonment of fifty years. *See* 18 U.S.C. § 1512(j).

**C.    History and Characteristics of the Defendant**

Defendant is a predator with no remorse and a history of committing these same types of offenses, all the while espousing his innocence and blaming his victims.

Defendant is a professional fraudster. As was shown at trial and is documented at PSR ¶97, Defendant was the ringleader of a UPC barcode-switching scheme in Florida and elsewhere from in or around September 2007 to in or around March 2010. Defendant was charged in Lake County, Florida, on September 8, 2009, with various crimes in connection with this activity. On January 11, 2010, Defendant pled guilty to and was sentenced on February 8, 2010, to one count

of racketeering. This prior offense involved recruiting others, including family members, to steal items by placing fraudulent bar codes over items and purchasing them for a lower price before selling them on eBay, just like the instant offense. (PSR ¶97; Testimony of Master Deputy Bud Hart; Prucha Tr. 8:16-11:16). Defendant attempted to obstruct justice in the Florida case as well by directing the destruction of evidence, and by perjuring himself during statements to law enforcement. (PSR ¶¶97, 110).

Defendant also has a history of sexually exploiting underage girls. He was previously convicted of having sex with a thirteen year old girl. (PSR ¶96), but likewise refuses to fully admit his conduct, instead claiming he was told she was eighteen. *Id.*

Furthermore, Defendant has a documented pattern of violence against women. (PSR ¶¶ 103, 105, 109). This history is consistent with his behavior towards the minors and others, as he used threats and intimidation to control his victims.

**D.    Need for the Sentence Imposed**

Defendant's pattern of predatory behavior and lack of remorse and accountability call for a lengthy term of imprisonment in order to achieve the aims of 18 U.S.C. § 3553(e).

Defendant is a predator who manipulated the minors in this case by preying upon their vulnerabilities. He exploited their lack of parental involvement and unstable home lives, their addictions to Xanax, and their desires to have someone care for them in order to mentally and emotionally control them. As he callously described in detail on his phone calls, he did not care about their welfare; all he cared about was whether he could use them for sex or for the fraud through paying them with money, trips, shopping trips, and Xanax. The level of manipulation was encapsulated in Minor #2's testimony, during which she broke down in tears saying that Defendant had been her "best friend", explaining that she had positive experiences with him and that she still cared about him. Defendant has severely warped her mindset as to what a healthy

and loving relationship is.

Defendant will undoubtedly repeat his crimes as soon as he has the opportunity, just as he has done before. Defendant lacks any remorse for the harm he has caused others. His testimony was rather remarkable as he unabashedly described in detail having sex with minors for money, giving them money to get whatever drugs they wanted, having ongoing sexual relationships with the minors while they were under the influence of drugs, and involving minors in his fraud scheme. Not once did Defendant betray a flicker of remorse, empathy, or acknowledgement that the minors are in fact victims of his crimes. Certainly Defendant himself will be undeterred by any term of imprisonment, but a lengthy sentence would protect the public and perhaps afford some measure of general deterrence and send the message that what he has done is wrong, it is criminal, and it is worthy of a significant term of imprisonment.

### E.    Guideline Sentencing Range & Recommendation

At a total offense level 43, criminal history category V, a guideline sentence would be life imprisonment were it not for the statutory maximums. Thus the PSR calculates a guideline term of imprisonment as 6,060 months (plus ten years for 18 U.S.C. § 2260A). (PSR ¶161).

For the reasons stated above, the government recommends a term of imprisonment of no less than **eighty years** or 960 months. This represents: twenty-five years for each victim of sexual exploitation, to be served consecutive to each other; plus a consecutive ten year term as mandated by 18 U.S.C. § 2260A; plus a consecutive twenty year term of imprisonment for the mail fraud scheme as it was related to but distinct from his sexual exploitation of minors. As the remaining charges are more closely related, the government suggests imposing concurrent terms of imprisonment for the remaining counts. The statutory terms of imprisonment and the government's minimum recommendations are as follows:

| Offense | Minimum | Maximum | Recommendation |
|---|---|---|---|
| Conspiracy (Count 1) | N/A | 5 years | 5 years concurrent |
| Mail Fraud (Counts 2-3, 8-11) | N/A | 20 years | 20 years consecutive to Cts. 12-23 |
| Sexual Exploitation of a Child (Counts 12-14) | 25 years | 50 years | 50 years: 25 years for each count, with Counts 12 & 13 to be served concurrent with each other and consecutive to Count 14, in recognition of separate victims and circumstances |
| Possession of Child Pornography (Count 15) | 10 years | 20 years | 20 years |
| Distribution of Xanax (Count 16) | 1 year | 10 years | 10 years |
| 18 U.S.C. § 2260A (Counts 17-19) | Count 17: 10 years consecutive to Count 12<br>Count 18: 10 years consecutive to Count 13<br>Count 19: 10 years consecutive to Count 14<br>To be served concurrent with all other counts. | | |
| Witness Tampering (Counts 20-23) | N/A | 50 years | 20 years concurrent |

## V.  Conclusion

Defendant is unique in the wide scope of his criminal conduct, his relentless refusal to admit any wrongdoing but instead blame child victims, his lack of any remorse, and repeated efforts to obstruct justice though bribery, perjury and intimidation. He is a danger to the community and is deserving of a lengthy term of imprisonment.

Respectfully Submitted,

17

Kevin E. VanderSchel
United States Attorney


By:  */s/ Virginia M. Bruner*
Virginia M. Bruner
Kelly Mahoney
Assistant United States Attorneys

U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa  50309
Tel:  (515) 473-9300
Fax: (515) 473-9292
Email:  Virginia.Bruner@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

   X   U.S. Mail          Fax          Hand Delivery

   X  ECF/Electronic filing          Other means


UNITED STATES ATTORNEY

By: s/ *Virginia M. Bruner*
        Assistant U.S. Attorney

18